# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BRUCE BEHRENS, KATHLEEN BEHRENS, SHERRI SHEFFERT, and DAVID J. SHEFFERT,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., U.S. BANK, N.A., CHICAGO MERCANTILE EXCHANGE INC., THE CME GROUP, INC., JOHN DOES #1-40,<br><br>Defendants. | No. C24-2047-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before me on motions (Docs. 56, 57, 60) to dismiss filed by defendants U.S. Bank, N.A. (U.S. Bank), JPMorgan Chase Bank, N.A. (JPMorgan), the CME Group, Inc. (CMEG), and the Chicago Mercantile Exchange (CME). Plaintiffs Bruce and Kathleen Behrens and Sherri and David Sheffert have filed a joint resistance (Doc. 75) to all three motions as well as a cross-motion (Doc. 76) to change venue and sever CMEG and CME if the court finds personal jurisdiction lacking as to those defendants. Defendants have filed replies (Docs. 77, 78, 79) and CMEG and CME have filed a resistance (Doc. 80) to the cross-motion. Oral argument is not necessary. *See* Local Rule 7(c).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' amended complaint (Doc. 54) alleges that they were victims of Peregrine Financial Group (PFG). They contend that they invested with PFG from 2007

to 2008 and suffered losses in September and October 2008. Doc. 54 at ¶ 39. Plaintiffs engaged an attorney to assist with claims in a customer arbitration before the National Futures Association (NFA) in 2009. Doc. 54 at ¶ 220. These arbitrations lasted until approximately 2011 and did not result in any recovery for plaintiffs. *Id.*

In July 2012, PFG CEO and Chairman Russell Wasendorf, Sr., attempted suicide and confessed in a note that he had committed fraud. *Id.* at ¶ 601. It was around this time that law enforcement and regulators began investigating PFG. *Id.* at ¶ 617. On July 12, 2012, multiple plaintiffs filed class actions in the Northern District of Illinois against U.S. Bank and JPMorgan, among others. On October 5, 2012, the class actions were consolidated as *In re Peregrine Financial Group Litigation*, 12-cv-5546 (N.D. Ill. 2012). Plaintiffs allege they were initially recognized as class members but were effectively decertified, as the settlement class included only customers who actually owned money, property or securities at the time Peregrine went bankrupt on or about July 10, 2012. *Id.* at ¶¶ 227-228, 619, 632.

On July 11, 2016, plaintiffs filed a putative class action against defendants and others in the United States District Court for the Southern District of New York. *See Behrens v. JPMorgan Chase Bank N.A. et al.*, No. 16-cv-5508 (S.D.N.Y.) (*Behrens I*). The court concluded that "the applicable statutes of limitations began to run, at the earliest, as of October 2008 and, at the latest, as of July 10, 2012." *Behrens I*, 2019 WL 1437019, at *5 (S.D.N.Y. Mar. 31, 2019). The court rejected plaintiffs' argument of equitable tolling on the basis of fraudulent concealment because they failed to explain how any alleged acts of concealment prevented plaintiffs from learning about the nature of their claims. *Id.* at *7. The court also rejected tolling based on the rule set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974),[1] because plaintiffs

---

[1] This rule provides that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe*, 414 U.S. at 554.

were not class members of the Illinois class action because they did not have funds deposited with PFG as of July 2012. The court reasoned that even if it assumed plaintiffs could have been members of the Illinois class action, *American Pipe* tolling "does not apply to permit putative class members to file a subsequent class action," only individual suits. *Id.* at *8 (citing *Korwek v. Hunt*, 827 F.2d 874, 878 (2d Cir. 1987)). Because all of plaintiffs' claims based on federal question jurisdiction under 28 U.S.C. § 1331 were barred by the applicable statutes of limitations, the court declined to exercise supplemental jurisdiction over plaintiffs' remaining state common law claims and dismissed them without prejudice. *Id.* at *9.

Plaintiffs and some defendants filed motions for reconsideration. Plaintiffs argued their federal claims were timely. Defendants argued that the court had original jurisdiction over the state law claims under the Class Action Fairness Act (CAFA), such that the court should have dismissed those claims on the merits. *Behrens v. JPMorgan Chase Bank N.A., et al.*, 16-cv-5508, 2021 WL 4134887, at *2 (S.D.N.Y. Sept. 9, 2021). The court denied both motions. The Second Circuit affirmed the dismissal of plaintiffs' claims as barred by the applicable statutes of limitations, *see Behrens v. JP Morgan Chase Bank, N.A., et al.*, No. 21-2603-CV, 2024 WL 1090856, at *1 (2d Cir. Mar. 13, 2024), and held that the district court was not obligated to exercise subject matter jurisdiction over the state law claims pursuant to CAFA because neither party had timely raised that issue. *See Behrens v. JPMorgan Chase Bank, N.A., et al.*, 96 F.4th 202, 208 (2d Cir. 2024) ("Had jurisdiction been raised timely, the district court would have been obligated to consider whether CAFA applies.").

Plaintiffs filed their initial complaint (Doc. 1) in this court on September 10, 2024. Defendants filed motions (Docs. 48, 49, 50) to dismiss and a motion (Doc. 40) to stay discovery until the court had ruled on the motions to dismiss. The court granted the motion to stay. Doc. 52. On February 14, 2025, plaintiffs filed an amended complaint (Doc. 54). Defendants responded with the motions (Docs. 56, 57, 60) to dismiss now before the court. The stay of discovery remains in effect. Doc. 68.

3

Plaintiffs allege the following claims:

Count I – Principal agency liability

Count II – Fraud by omission against U.S. Bank, JPMorgan and CMEG

Count III – Violation of the Illinois Fiduciary Obligations Act, 760 Ill. Comp. State. § 65.1 et seq., or, alternatively, of various states' enactments of the Uniform Fiduciaries Act against the bank defendants and CMEG

Count IV – Breach of fiduciary duty against all defendants

Count V – Breach of contract including its obligation of good faith and fair dealing against CME defendants and bank defendants

Count VI – Negligence and gross negligence against CMEG

Count VII – Breach of fiduciary duty and unwritten contract against CMEG

Count VIII – Aiding and abetting against all defendants

Count IX – Violation of Iowa Code § 706.A2 et. seq. against all defendants

Count X – Negligent and intentional infliction of emotional distress against all defendants

Count XI – Punitive damages against all defendants

Count XII – Unjust enrichment and restitution under state law against all defendants

Count XIII – Intentional interference with contract and prospective business advantage against all defendants

### III. DISCUSSION

All defendants argue that res judicata bars plaintiffs' claims and, in the alternative, that they are barred by the applicable statutes of limitations. I will address these arguments before deciding whether to consider alternative arguments of dismissal (such as factual plausibility, immunity, preemption and lack of personal jurisdiction) raised by some of the defendants.

4

## A. Res Judicata

Defendants argue that because original federal subject matter jurisdiction was available to plaintiffs in *Behrens I* under CAFA, and they failed to assert it resulting in the discretionary dismissal of their state law claims, res judicata bars a new action on those claims. *See Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1165 (1st Cir. 1991). In *Kale*, the plaintiff invoked federal question jurisdiction under 28 U.S.C. § 1331 based on a claim under the Age Discrimination in Employment Act (ADEA). He also alleged pendent state law claims. *Kale*, 924 F.2d at 1163. The court concluded the ADEA was time-barred and dismissed the state law claims without prejudice. While diversity jurisdiction also would have existed, plaintiff did not plead it as grounds for the court to exercise jurisdiction. *Id*. The plaintiff subsequently filed suit in state court alleging various state law claims. Defendant removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a) and then moved to dismiss the action based on the preclusive effect of the first lawsuit. *Id*. at 1164. The district court granted the motion, "ruling that the failure to bring the state-law claims under diversity jurisdiction in [the first lawsuit] barred the assertion of those claims in another, later proceeding. *Id*. The First Circuit affirmed, "holding that when a plaintiff pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists." *Id*. at 1165. *See also Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1368 (7th Cir. 1988) ("Because Shaver neglected to assert the existence of diversity jurisdiction in his prior action in order to pursue his breach of contract claims, both the strict test of and the policy behind the *res judicata* doctrine bars the present action.").

Defendants argue the result is the same when CAFA is the basis for original subject matter jurisdiction. *See Boyd v. J.E. Robert Co., Inc.*, 15 Civ. 2302, 2016 WL 1359521, at *3 (E.D.N.Y. Mar. 29, 2016) (holding that res judicata bars a subsequent lawsuit based on CAFA because it was previously available and would have allowed all of plaintiffs' claims to be heard in plaintiffs' first action). They contend that plaintiffs could

5

have (and should have) asserted jurisdiction under CAFA to allow the New York court to hear their state law claims. However, plaintiffs did not assert CAFA as a basis of subject matter jurisdiction in *Behrens I* and actually opposed it when defendants asked the court (in an untimely motion for reconsideration) to exercise subject matter jurisdiction and deny plaintiffs' state law claims on the merits.

Plaintiffs argue the Eighth Circuit has rejected *Kale* and would allow plaintiffs' claims. They rely on *Pilgrim v. State Farm Mut. Auto. Ins. Co.*, 4:05CV00522, 2005 WL 8164520 (E.D. Ark. Sept. 1, 2005), in which the court stated:

> The Eighth Circuit Court of Appeals has held that where the original action is dismissed on a jurisdictional basis, the dismissal does not preclude a subsequent suit on a different theory and jurisdictional basis. In analyzing this issue, the Eighth Circuit relies upon the fact that the original dismissal was not a decision on the merits of the substantive claim. *See, McCarney v. Ford Motor Co.*, 657 F.2d 230 (8th Cir. 1981) and *Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368 (8th Cir. 1997). Because the original dismissal of Plaintiff's state law claims was not a dismissal on the merits, the Court finds that Plaintiff's subsequent suit on different theories, and based on a different jurisdictional basis is not barred. Defendants' motion to dismiss based on the doctrine of res judicata is denied.

*Pilgrim*, 2005 WL 8164520, at *2.[2]

"Dismissal on the basis of res judicata at the pleading stage is appropriate if the defense is apparent on the face of the complaint." *Magee v. Hamline University*, 775 F.3d 1057, 1058-59 (8th Cir. 2015) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012)). The "face of the complaint" includes "public records and materials embraced by the complaint" as well as "material[s] attached to the

---

[2] In *Kulinski*, the court distinguished *Kale* and *Shaver*, noting that the original cause of action in those cases was dismissed on the merits and with prejudice. *Kulinski*, 112 F.3d at 373, n.3. In *Kulinski*, the claim was dismissed for lack of subject matter jurisdiction and was not on the merits. *Id.* (citing *Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 148 (8th Cir. 1981)). In *Behrens I*, the court ruled on the federal claims on the merits, concluding they were barred by the applicable statutes of limitations. As such, defendants argue the holding in *Kulinski* does not apply.

complaint." *C.H. Robinson*, 695 F.3d at 764.³ Res judicata refers to both claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit'" while "[i]ssue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). "[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020). "The law of the forum that rendered the first judgment controls the res judicata analysis." *Laase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011). As such, federal law applies. *See Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir. 1982) (concluding federal law governed the issue of res judicata because the court was tasked with determining the effect of a judgment rendered by a federal court on a claim arising under federal law).⁴ In the Eighth Circuit, res judicata applies if the following elements are satisfied:

---

³ Because *Behrens I* and *In re Peregrine* are public records and necessarily embraced by the amended complaint, *see* Doc. 54 at 44-46, I will consider them in deciding defendants' motions. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

⁴ Whether Second Circuit law or Eighth Circuit law applies is a question that does not have a clear answer. *See* Wright & Miller, Federal Practice and Procedure, § 4466 (2d ed. 2015) ("It remains to be determined whether a court in one regional circuit will use its own circuit law to measure the preclusion effects of a judgment from a court in a circuit with different views of preclusion. Although in other settings preclusion is measured by the law of the judgment court, that rule may cede to the strong tendency to adhere to local circuit law as the correct view of what should be uniform federal law."). Neither the Second Circuit nor the Eighth Circuit has directly addressed the res judicata issue presented here: whether a federal court's judgment on federal claims and decision not to exercise supplemental jurisdiction over the state law claims (thereby dismissing them without prejudice) has preclusive effect as to those state law claims in a subsequent federal case based on diversity jurisdiction if an alternative basis of subject matter

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action. Furthermore, the party against whom res judicata is asserted must (5) have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

*Rutherford v. Kessel*, 560 F.3d 874, 877 (8th Cir. 2009) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). Elements 1 and 5 are disputed here.

Defendants argue there was a final judgment on the merits in *Behrens I* and plaintiffs could have litigated their state law claims under CAFA jurisdiction, which they chose not to raise. Plaintiffs argue there was no final judgment as to the state law claims (as they were dismissed without prejudice) and thus, they did not have a full and fair opportunity to litigate those claims in the first lawsuit. They argue the state law claims could not have been brought under CAFA because it is a discretionary removal statute and there is no mandatory requirement that it be used to confer original jurisdiction in federal court in the first instance.

Typically, res judicata would not apply to state law claims dismissed without prejudice if the court chose not to exercise supplemental jurisdiction and had no other basis of subject matter jurisdiction. *See Saadoon v. Barr*, 973 F.3d 794, 801 (8th Cir. 2020) ("Ordinarily, a judgment dismissed without prejudice [for lack of subject matter jurisdiction] does not create a res judicata bar."); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4436 (3d ed. 1998) ("Discretionary refusal to exercise supplemental jurisdiction likewise does not preclude a subsequent action on state-law claims in state court or in a federal court that has an

---

jurisdiction (*i.e.*, CAFA) was available in the first lawsuit. I will rely on Eighth Circuit law for general res judicata principles (which do not differ materially from those under Second Circuit law) and will otherwise focus on the cases and authorities cited by the parties as well as any others I find relevant to this issue.

independent basis of subject-matter jurisdiction."). If an alternative basis of subject matter jurisdiction was available in the first lawsuit that plaintiffs chose not to exercise, they are precluded from presenting their dismissed state law claims to a different federal court. *See Markley v. U.S. Bank National Ass'n*, No. 24-1163, 2025 WL 1739390, at *6-7 (10th Cir. June 24, 2025) ("If a party could have litigated a claim in a prior lawsuit by asserting diversity jurisdiction but fails to do so, that claim is precluded if the prior lawsuit arose from the same operative facts and reached a final judgment on the merits.").

While *Markley* and other courts applying this principle have relied on the availability of diversity jurisdiction in the first lawsuit, I agree with defendants that the outcome should not be different if the jurisdiction is based on CAFA under 28 U.S.C. § 1332(d), as that is a form of diversity jurisdiction. *See* 28 U.S.C. § 1332(d)(2) ("The district court shall have original jurisdiction of any civil action in which the matter of controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which (A) any member of a class of plaintiffs is a citizen of a State different from any defendant"). Plaintiffs attempt to distinguish CAFA by arguing that it is a discretionary removal statute and there is no affirmative duty of plaintiffs to assert it as a basis for original subject matter jurisdiction in the first instance. They also argue that jurisdiction under CAFA was likely improper based on the exceptions.[5] While plaintiffs do not identify which exceptions they believe apply, it appears that none of the exceptions requiring the court to decline jurisdiction apply. *See* 28 U.S.C. § 1332(d)(4).[6]

---

[5] Plaintiffs argue the exceptions would have required costly and lengthy jurisdictional discovery. The only exceptions they identify include that New York is the financial capital of the world and there were at least 10,000 investors in the first class action. Doc. 75 at 26. Section 1332(d)(3) lists circumstances in which the district court may decline to exercise jurisdiction and Section 1332(d)(4) lists circumstances in which a district court must decline to exercise jurisdiction. It is unclear from plaintiffs' brief which of the exceptions in the statute they believe applies based on the number of members in the first class action and New York being the "financial capital of the world."

[6] A district court shall decline to exercise jurisdiction under paragraph (2)--

In addition, CAFA jurisdiction is not reserved solely for the removal of cases to federal court. The plain language of the statute establishes "original jurisdiction" in federal courts as a form of diversity jurisdiction. *See* 28 U.S.C. § 1332(d)(2). Such jurisdiction is not discretionary if the requirements are met. *See id.* ("[t]he district courts *shall have* original jurisdiction . . . ."); *Behrens I*, 96 F.4th 202, 208 (2d Cir. 2024) ("Here, if the CAFA requirements under §§ 1332(d)(2) and (d)(5) are met and no exceptions to CAFA under §§ (d)(3) and (d)(4) apply, "subject matter jurisdiction under CAFA is not discretionary." (quoting *L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 118 (2d Cir. 2020)). The CAFA requirements are: (1) minimal diversity, meaning that any member of the class is a citizen of a state different from any defendant; (2) at least 100 putative members; and (3) over $5,000,000 in controversy exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (d)(5)(B).

Plaintiffs do not dispute that these requirements were met in the New York class action. Plaintiffs' second amended complaint (Doc. 56-2) in that action indicated that plaintiffs were suing on behalf of themselves and other similarly situated individuals or

---

(A)(i) over a class action in which--
    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
    (II) at least 1 defendant is a defendant--
        (aa) from whom significant relief is sought by members of the plaintiff class;
        (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
        (cc) who is a citizen of the State in which the action was originally filed; and
    (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

business who held accounts at PFG prior to July 2012 and found their accounts worthless or nearly worthless. Doc. 56-2 at 12. They alleged that PFG had "at least 24,000 customers" and that the Illinois class action covered 14,000 purported class members. *Id.* at 39, 56. They also alleged the Plaintiffs are citizens of Iowa and at least one defendant was a citizen of a different state. *Id.* at 31, 34, 39-56. They alleged damages in the amount of $3,300,000.00 and asked that they be trebled, which was available relief under their RICO claim. *Id.* at 124, 221. *See also id.* at 159-62 (alleging the requirements of Federal Rule of Civil Procedure 23 are met for class certification). As such, it appears CAFA jurisdiction would have been mandatory unless one of the exceptions applied.

In addition to the mandatory exceptions under § 1332(d)(4), the court has discretion to decline to exercise jurisdiction "in the interests of justice and looking at the totality of the circumstances . . . in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of" six factors. 28 U.S.C. § 1332(d)(3). Plaintiffs have not alleged that the circumstances were present for the court to exercise its discretion to accept or decline jurisdiction under CAFA. Nothing in the second amended complaint in *Behrens I* (Doc. 56-2) suggests this home state exception applied.

Because plaintiffs have not established that the court could have exercised discretion, or was required to decline jurisdiction based on the statutory exceptions, there was no jurisdictional obstacle to the court exercising jurisdiction under CAFA and resolving the state law claims raised in the New York action. As such, res judicata precludes plaintiffs from pursuing their state law claims (or any other claims that could have been raised in the first instance) in a subsequent federal lawsuit. Defendants' motions to dismiss based on res judicata are granted.

11

## B. Are Plaintiffs' Claims Time-Barred?

Even if res judicata does not bar plaintiffs' claims, they would be barred by the applicable statutes of limitations. In *Behrens I*, the court concluded plaintiffs' federal claims were time-barred and declined to exercise supplemental jurisdiction over plaintiffs' state law claims. Defendants argue that plaintiffs' claims alleged in this lawsuit are also time-barred and that certain rulings made in *Behrens I* prevent plaintiffs from relitigating those issues in this litigation under the doctrine of issue preclusion.

The longest statute of limitations for any of plaintiffs' cognizable claims is five years. *See* Iowa Code § 614.1(2) (two-year limitations period of personal injury claims); Iowa Code § 614.1(4) (five-year limitations period for monetary injury claims).[7] "[A] limitations period does not begin to run until the plaintiff discovers, or with reasonable diligence should have discovered, the injury giving rise to the claim." *Rivas v. Brownell*, 18 N.W.3d 211, 221 (Iowa 2025). The court in *Behrens I* concluded "the applicable statutes of limitations began to run, at the earliest, as of October 2008 and, at the latest, as of July 10, 2012." *Behrens*, 2019 WL 1437019, at *5.[8]

Plaintiffs argue that the statute of limitations did not begin to run until 2012 and that Iowa's savings statute – Iowa Code § 614.10 – saves plaintiffs' claims because each of those claims was filed in *Behrens I* in 2016.[9] Before addressing whether Iowa's savings statute or any tolling provision applies, I must determine when plaintiffs' claim accrued. Plaintiffs argue their claims did not accrue until they learned of the cause of

---

[7] While plaintiffs allege breach of contract (Claim V), they do not allege or identify any written contracts.

[8] Plaintiffs' federal claims in *Behrens I* were subject to a two-year statute of limitations (for an alleged violation of the Commodity Exchange Act) and four-year statute of limitations (for a Racketeer Influenced and Corrupt Organizations Act (RICO) claim). *See Behrens I*, 2019 WL 1437019, at *4.

[9] Plaintiffs also rely on equitable estoppel, class action tolling (or tolling under *American Pipe*) and cross-jurisdictional tolling.

their injury in 2012 via Wasendorf's suicide note and a letter from their former attorney dated July 31, 2012. Doc. 75 at 29.

"Generally, a claim accrues when 'the wrongful act produces injury to the claimant.'" *Hallett Const. Co. v. Meister*, 713 N.W.2d 225, 230 (Iowa 2006) (quoting *K&W Elec., Inc. v. State*, 712 N.W.2d 107, 115 (Iowa 2006) (citation omitted)). "Under the discovery rule . . . a limitations period does not begin to run until the plaintiff discovers, or with reasonable diligence should have discovered, the injury giving rise to the claim." *Rivas*, 18 N.W.3d at 221. It "exists in part to preserve the claims of victims who do not know they are injured and who reasonably do not inquire as to any injury." *Gabelli v. S.E.C.*, 568 U.S. 442, 450 (2013). "A claimant can be on inquiry notice without knowing 'the details of the evidence by which to prove the cause of action.'" *Hallett Const.*, 713 N.W.2d at 231 (quoting *Vachon v. State*, 514 N.W.2d 442, 446 (Iowa 1994)). *See also Franzen v. Deere and Co.*, 377 N.W.2d 660, 662 (Iowa 1985) ("[T]he duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury. It is sufficient that the person be aware that a problem existed."). "'[T]he discovery rule is not available to toll the running of the filing requirements' when the 'plaintiff is on notice of a prima facie case.'" *Benskin, Inc. v. West Bank*, 952 N.W.2d 292, 303 (Iowa 2020) (quoting *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 576 (Iowa 2018)). "Later discovery of facts may make the claim stronger, but even under a relatively robust approach to the discovery rule, the knowledge of facts sufficient to make a prima facie case . . . is sufficient to trigger the running of the filing limitations." *Id.* (quoting *Mormann*, 913 N.W.2d at 576-77).

Here, plaintiffs allege the injury occurred in October 2008. *See* Doc. 54 at ¶ 39 (alleging plaintiffs' losses at Peregrine and over the CME occurred in September and October 2008): ¶ 114 (alleging the Shefferts' entire investment was purposefully lost in the "RICO Ponzi Scheme" from October 2, 2008 to October 9, 2008); ¶ 131(3) ("During the week of October 2, 2008 through October 9, 2008, Plaintiffs' entire investments were wiped as a result of defendants' failure to safeguard these customer segregated

13

accounts"); ¶ 272 ("Imprudent trading continued even in these IRA accounts until the week of October 2, 2008 through October 8, 2008 where all accounts were wiped out, sending these investors home penniless and having to still pay their bills"); ¶ 277 ("These accounts remained open until October 8, 2008 when all the customer account values were wiped out"); ¶ 660 (alleging plaintiffs' trading accounts were terminated in October 2008 "and they were told by Garlon Maxwell that they had been financially wiped out around that time"). Plaintiffs pursued an arbitration in 2009. This arbitration against PFG was before the NFA.

Plaintiffs argue this arbitration was based on broker misconduct and lack of risk disclosure and that the issue of misappropriation of customer funds was still unknown. Doc. 75 at 15. They allege that by the end of 2012, they filed their notices of claims in PFG's bankruptcy case. *Id.* at ¶¶ 614-15; Doc. 75-6 (allowing the Shefferts' claim as a general, unsecured claim in the Chapter 7 bankruptcy action); Doc. 75-8 (showing plaintiffs filed their proof of claim in the bankruptcy action on December 14, 2012). According to plaintiffs, the bankruptcy claims became part of the class action, *In Re Peregrine Financial Group Customer Litigation*, 12-CV-5546 (N.D. Ill. 2012), and were effectively merged. Doc. 75 at 15-16. In June 2016, plaintiffs were effectively decertified from the class as they were not included as members of the settlement classes because they did not still have account balances with PFG as of 2012. Doc. 54 at ¶¶ 619, 625 632; Doc. 75 at 31, 34-35. Plaintiffs filed their case in the Southern District of New York on July 11, 2016. Doc. 54 at ¶ 224.

Plaintiffs were on inquiry notice prior to July 2012. Their accounts were wiped out in October 2008. Doc. 54 at ¶¶ 39, 114, 131, 272, 277, 660. They admit they retained an attorney in 2009 to pursue claims for compensation against PFG before the NFA. Doc. 54 at ¶ 221. While these claims were purportedly based on a claim of lack of risk disclosure unrelated to the alleged "Ponzi Scheme," plaintiffs' actions indicate they had clearly identified a duty to investigate by that time based on the total loss of their investment over the course of a week. Thus, the statute of limitations on plaintiffs'

14

claims began to run on October 8 or 9, 2008. Because plaintiffs did not file their claims until 2016 at the earliest, they are barred by the statute of limitations.

Plaintiffs argue I should apply equitable estoppel based on fraudulent concealment to prevent the application of the statute of limitations. "Equitable estoppel prevents a defendant 'from asserting the bar of the statute of limitations' based on 'his agreement, representations, or conduct.'" *Christy v. Miulli*, 692 N.W.2d 694, 700 (Iowa 2005) (quoting *DeWall v. Prentice*, 224 N.W.2d 428, 430 (Iowa 1974)). "There must be conduct amounting to false representation or concealment, and a party relying thereon must be thereby misled into doing or failing to do something he would not otherwise have done or omitted." *Id.* To establish equitable estoppel, plaintiffs must demonstrate by clear and convincing evidence: (1) the defendant has made a false representation or has concealed material facts, (2) the plaintiffs lack knowledge of the true facts, (3) the defendant intended the plaintiff to act upon such representations and (4) the plaintiffs did in fact rely on such representations to their prejudice. *Hook v. Lippolt*, 755 N.W.2d 514, 524-25 (Iowa 2008).

Plaintiffs' equitable estoppel argument is based on defendants' denial of liability or responsibility for the alleged "Ponzi Scheme." Doc. 75 at 31. As to any fraudulent statements, they rely on a letter from their former counsel in the NFA arbitration dated July 31, 2012, telling plaintiffs they could fully recover for their losses by joining in the class action. *Id.* Additionally, plaintiffs argue as long as they "continued to investigate their claims with reasonable diligence, Iowa should allow continued tolling until such time that a person of ordinary intelligence could have discovered the claim." *Id.* at 32.

These arguments fail to establish equitable estoppel based on fraudulent concealment, primarily because plaintiffs have not identified any false representations or concealment of material facts by these defendants. At most, they have identified only a denial of any liability or responsibility. *See Mormann*, 913 N.W.2d at 562 ("[I]f a failure to confess discriminatory motive were sufficient to give rise to an equitable estoppel

claim, the . . . limitation [period] would be meaningless."). As such, equitable estoppel does not apply.

Plaintiffs also advocate for tolling the statute of limitations based on *American Pipe* and cross-jurisdictional tolling,[10] as well as Iowa's savings statute. Plaintiffs cite Iowa Rule of Civil Procedure 1.277, which tolls the statute of limitations for all class members upon the commencement of a class action. Under *American Pipe*, "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *American Pipe*, 414 U.S. at 553. This rule has also been extended for class members who later file individual suits rather than intervene. *Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 997 (8th Cir. 2007) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983)). Iowa's savings statute provides: "If, after the commencement of an action, the plaintiff for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first." Iowa Code § 614.10. Plaintiffs must satisfy the following requirements: (1) plaintiff's negligence did not cause the failure of the former action, (2) a new action is commenced within six months of the former action, (3) the parties must be the same, and (4) the cause of action must be the same. *Sautter v. Interstate Power Co.*, 563 N.W.2d 609, 611 (Iowa 1997).

*Behrens I* considered whether plaintiffs were entitled to class action tolling pursuant to *American Pipe* and found it was inapplicable. The district court reasoned that because the Illinois class action defined the putative class members as "former

---

[10] Cross-jurisdictional tolling refers to tolling based on a class action under the *American Pipe* rule where the class action is filed in another jurisdiction. The parties have not identified any Iowa case addressing cross-jurisdictional tolling and I have found none. In any event, as explained below, I find that plaintiffs' claims were not tolled during the pendency of the Illinois class action and were time-barred at the time of the New York class action.

16

customers of Peregrine . . . who have lost money as a result of the collapse of [Peregrine] in July 2012" plaintiffs never could have been part of the putative class because they did not claim to have lost money as a result of the collapse in 2012. *Behrens I*, 2019 WL 1437019, at *2. Even if plaintiffs could have been members of that action, the court reasoned that *American Pipe* tolling applies only to subsequent individual suits, not subsequent class actions. *Id*. Finally, the court noted in a footnote that the claims asserted in *Behrens I* were not the same claims asserted in the Illinois class action. The court noted that the Illinois class action contained no allegations related to market losses, "shadow trading," margin calls or the particulars of any plaintiff's trades. As such, the court noted the Illinois class action arguably did not place the defendants on notice that they might face claims of former PFG customers who received falsified statements or who sought to recover trading losses suffered several years earlier. *Id*. at *2, n.8.

Defendants argue (1) plaintiffs cannot relitigate their tolling arguments due to issue preclusion and (2) Iowa has not adopted the rule of *American Pipe* and plaintiffs' claims are so different from the claims in the Illinois class action as to preclude the doctrine's application. Additionally, CME and CMEG argue that class action tolling does not apply to plaintiffs' claims against them because they were not named as defendants in the class action.[11] Doc. 79 at 11. Plaintiffs argue they were class action members, but were ultimately decertified and that many of their current claims are identical to those asserted in the Illinois class action.

Regardless of whether issue preclusion applies to plaintiffs' argument, I would reach the same outcome as the Southern District of New York[12] and the Second Circuit

---

[11] I agree that this is an appropriate basis to reject plaintiffs' tolling arguments as to their claims against CME and CMEG.

[12] *See Behrens I*, 2019 WL 1437019, at *8 (S.D.N.Y. Mar. 31, 2019).

17

Case 6:24-cv-02047-LTS-MAR    Document 81    Filed 07/25/25    Page 17 of 19

Court of Appeals[13] to the extent the rule of *American Pipe* does not allow successive class actions. *See China Agritech v. Michael H. Resh, et al.*, 584 U.S. 732, 735 (2018) (holding that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations").[14] Plaintiffs offer no argument as to why this proposition does not apply to the New York class action. As such, plaintiffs' claims are not entitled to class action tolling under *American Pipe* or cross-jurisdictional tolling, meaning Iowa's savings statute likewise does not save plaintiffs' claims.

For these reasons, plaintiffs' claims are barred by the applicable statutes of limitations and are not saved by any of the tolling provisions raised herein. Thus, even if res judicata does not apply, defendants are entitled to dismissal.

---

[13] *See Behrens I*, 2024 WL 1090856, at *2 (2d Cir. Mar. 13, 2024).

[14] While *China Agritech* was decided in 2018 and plaintiffs had been decertified from the Illinois class action in 2015, the law up to that point had identified only two options for plaintiffs to pursue after denial of class certification – intervene as individual plaintiffs or bring an individual suit. *See Crown, Cork & Seal Co.*, 462 U.S. at 353-54. Additionally, the rule of the Second Circuit before *China Agritech* was that *American Pipe* does not apply to successive class suits. *See Korwek*, 827 F.2d at 879 ("The Supreme Court in *American Pipe* and *Crown, Cork* certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints."). The complaints in the Illinois and New York actions alleged similar claims. *See In Re Peregrine Financial Group Customer Litigation*, 12-CV-5546, Doc. 169 (N.D. Ill. 2012) (alleging claims of fraud by omission, violation of the Illinois Fiduciary Obligations Act, negligence, breach of fiduciary duty, aiding and abetting fraud, aiding and abetting fiduciary duty, aiding and abetting conversion against U.S. Bank and breach of contract and breach of fiduciary duty against JPMorgan); *Behrens I*, 16-cv-5508, Doc. 105 (S.D.N.Y. 2017) (alleging claims of fraud by omission, violation of Illinois Fiduciary Obligations Act, breach of fiduciary duty against the bank defendants). Plaintiffs were not permitted to file a successive class action under the applicable law that existed at the time they were decertified from the Illinois class action.

## IV. CONCLUSION

For the reasons stated herein:

1. Defendants' motions (Docs. 56, 57, 60) to dismiss are each **granted** and this action is hereby **dismissed**.

2. Plaintiffs' cross-motion (Doc. 76) to change venue or sever CMEG and CME is **denied as moot**.

3. The Clerk of Court shall **close this case**.

**IT IS SO ORDERED** this 25th day of July, 2025.

_____
Leonard T. Strand
United States District Judge